## WOODLAND GIN CO. *v.* J. C. MOORE.

[60 South. 574.]

NEGLIGENCE. *Excavations. Guarding. Res ipsa loquitur.*

Under the facts disclosed in this case the court held that the doctrine of "*res ipsa loquitur*" did not apply, as the ditch in question was entirely obvious to the eyes of all, and was not a menace to man or beast under ordinary circumstances, and the most thoughtful and careful constructor could not have foreseen and provided against the accident for which suit was brought.

APPEAL from the circuit court of Chickasaw county.
HON. H. K. MAHON, Judge.

Suit by J. C. Moore against the Woodland Gin Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. T. Stovall,* for appellant.

An owner allowing the public to use a path across his land is not bound to keep his entire premises in safe condition for pedestrians, and when a person leaves the path and wanders in a ditch partly concealed from view, the owner is not liable. 50 S. E. 1003.

Defendant was under no obligation to render her premises safe for any purpose for which she could not reasonably anticipate they would be used. 34 N. W. 566.

Obviously, the rule that a keeper of a public place of business is bound to keep his premises and the passageways in a safe condition, and use ordinary care to avoid accidents and injury to those properly entering upon the premises on business, does not apply to such parts of the building as are used for the private purposes of the owner, unless the party was induced by the invitation or allurement of the owner, expressed or implied, to enter thereon. 1 Thompson on Negligence, 989.

The owner of land owes no duty to a licensee who enters thereon of his own pleasure without inducement, except to refrain from doing him willful or wanton injury. 78 Miss. 787.

Plaintiff was not on business with the company but was upon its lot of land in pursuit of his own errand and pleasure. A person who, without invitation or inducement of the owner, goes upon the land or premises of the owner, takes such premises with all the dangers attending it. The appellee, in going upon the private lands of appellant took upon herself all such risks of such entry. The damages suffered by her are not an injury for which an action lies. 78 Miss. 787.

Whether trespasser or licensee it was still his duty to conduct himself with ordinary care and prudence for his own protection. Whether there be any real distinction between the duty owing to a trespasser and that owing to a licensee, the burden of exercising ordinary care is incumbent upon the party even if a licensee. He was not at the time at a place where duty called him, or invitation attracted him. 87 Miss. 488.

It has been reasoned that an invitation to the public having lawful business on an individual's premises, implied by the aspect of the house and grounds, does not cover the whole yard, irrespective of pathways, necessary lines of travel, or anything on the premises promising security. If for his own convenience, a person leave the usual and ordinary way, or for any other reason save a defect in the usual way, and seek to depart from the premises by another way, he remits himself to the condition of a bare licensee, so, that he cannot recover damages in case he is injured while so making his exit. 1 Thompson on Negligence, 990.

Bare licensees take the premises of the landowner as they find them, and come upon them at their own risk, and he is under no duty to exert himself to keep them safe for their benefit. . . . Where a man establishes a

private way of any sort for his own purposes merely, the mere fact that he is not so unneighborly as to exclude the public from the use of it ought not, it would seem, to place him under any particular duty to care for it to the end of promoting their safety. 1 Thompson on Negligence, 1015.

In an action to recover damages for an injury resulting from negligence of defendant, the rule as to burden of proof of concurring negligence on the part of the plaintiff is that the plaintiff must satisfy the jury, in order to entitle him to recover, that he was not guilty of negligence which contributed to produce the injury. 65 Barb. 146.

In view of the law and the facts in this case the peremptory instruction should have been given defendant, it is clearly a case of *damnum absque injuria,* and I respectfully ask the court to reverse the case and remand the cause.

*Joe H. Ford,* for appellee.

The main contention of counsel for appellant in this cause is that the court refused to give a peremptory instruction to find for the defendant, or, to put it in another form, admitting all the facts shown by this record, and the reasonable inference to be drawn therefrom, plaintiff should not have recovered. I submit that he is wrong in this. We have here a cause where this machinery had been operated as a public cotton gin, grist mill and sawmill since its construction about three years before the injury, and during this time the entire public was invited by appellant to come there. This large machinery, pool and all, was situated on a very small space of ground, 150 feet square, which was entirely surrounded by public streets. During this three years this entire lot was used, by invitation of appellant, by the public on both sides of this very dangerous ditch which was left open and entirely unprotected; on the east side by the public who

patronized the gin, sawmill and gristmill, in watering their stock at the public watering place put there by appellant "for the convenience of its customers," and "as an inducement to the public" to come to its gin, sawmill and gristmill; on the west, as a sawmill and public log and lumber yard. It was absolutely necessary to the transaction of the particular business carried on there for its own benefit, that the public should bring their stock and teams on the premises. It was therefore incumbent on appellant to afford the public safe and proper premises, and to exercise due care and caution to protect the public from danger, having due regard to the character of the business carried on, both as to their persons and property. 2 Cooley on Torts (3 Ed.), p. 1258; *Lepnick* v. *Gaddis*, 72 Miss. 200, 26 L. R. A. 686; 16 Am. and Eng. Ency. of Law (1 Ed.), pp. 413 and 414, notes; *Haywood* v. *Miller*, 34 Am. Rep. 229; *Davis* v. *Central Cong. Society of Ja. Plains*, 37 Am. Rep. 386.

Counsel for appellant cites *Railroad Co.* v. *Arnola*, 78 Miss. 787, as authority to sustain his contention. It is clear by reference to this case that it is not at all in point. This court, in that case, pointed out the fact that "the appellee was not on business with the company, but was upon its lot of land in pursuit of her own pleasure and errand." He also cites *Korter* v. *Railroad Co.*, 87 Miss. 488, 40 South. 258. Neither does that case apply to the case at bar. In both of these cases the injured persons were at most only bare licensees if indeed not actual trespassers. In the case at bar we have it from the mouths of the defendant's own witnesses that this watering place was placed there as an additional inducement to the public to patronize its business. Plaintiff was not a bare licensee; he was a customer of appellant, was at the time waiting to be served by appellant and had to be there on the ground with the team to move his load at any time appellant should get ready for him. He was with his team at the very time where the public as customers of

appellant were invited, in the course of his and their business, to go. It was the duty of appellant which it owed to appellee as part of the public and as one of its customers, to exercise due care and caution to have the premises in reasonably safe condition and to protect him from danger. The doctrine is thus stated at the end of the first paragraph on page 161 of Biglow on Torts (8 Ed.): "But it seems that where there is an element of benefit expected by the owner of the premises or other licensor, the invitation carries with it the duty not to be guilty of negligence active or passive in regard to danger." The doctrine of this case is also well stated by the same author on pages 162 and 163. Appellee's servant was not there with his team merely for his own pleasure or convenience, but to carry on business with appellant and at its invitation, having no notice whatever of this deadly hidden danger. 29 Cyc. pp. 453, 454, 455 and authorities there cited. The distinction between plaintiff and a bare licensee is clearly shown in 29 Cyc. 451. None of the authorities cited by counsel for appellant sustain his position, nor do they have any sort of bearing on this case, save the quotation from one Thompson on Negligence, 989, which clearly sustains the position of appellee.

The appellant was bound to take notice of the fact that the public coming on the premises to patronize the gin and mills thereon were bound to use horses, oxen and mules, and could not rest on the fact that a man would have more sense than to run into this dangerous and hidden ditch, but due and reasonable care, prudence and a proper regard for the rights of others required it to take notice that such animals would be likely to do just what plaintiff's oxen did on this occasion. The proof shows that plaintiff's driver did all in his power to stop the oxen and keep them from falling into this deadly pitfall. The owner must take into consideration the uses to which his premises are to be put by the public which he has invited to become his customers thereon.

COOK, J., delivered the opinion of the court.

Appellant was the owner of a steam gin which was located upon a lot in the town of Woodland. This lot was about one hundred and fifty feet square, and was bounded on its four sides by streets of the town. Upon the lot was a ginhouse proper with the engine and boiler room attached. There was also a storage house for cotton in the seed to be ginned in its turn. Across the rear of the lot, and about one hundred feet from the gin and storage house, there was a pond fenced in by wire, in which fence there was a gate provided for ingress to the pond. It was the habit of the patrons of the ginning company to enter the premises at the northwest corner, drive down the driveway about thirty feet to the scales immediately in front of the ginhouse, and there have the loaded wagons weighed, and from thence east to the cotton house, and there unload the seed cotton, and from thence around the cotton house and through a passageway between it and the ginhouse, back to the scales to weigh the empty wagon. The eastern two-thirds, or thereabouts, of the lot, was used for the storage of wood, with ample passageways for teams and wagons going around the cotton house and to the pond at the rear.

The evidence shows that it is the custom of patrons of the gin company (acquiesced in by the company), when they so desire, to drive their teams down to the pond for the purpose of watering their stock, The company had dug an open ditch from the rear of the boiler room southward to and into the pond. This ditch was about two feet wide and two and one-half feet in depth. About three-fifths of the lot was to the east of the ditch, and there was no way provided for crossing this ditch going west, the proof showing that part of the lot was vacant and not used at all. The teamster of appellee, after having unloaded his wagon, decided to take his team down to the pond, and permit them to slake their thirst, but the

event shows that the team did the taking, instead of the driver. The driver succeeded in conducting his team safely to the gate at the northeast corner of the inclosure of the pond, but it was there the trouble began. It seems that when the gate was being opened, the steers, growing restless, determined to take matters into their own hands (if hands can be used in this connection), and turned at right angles to the route they had been traveling and bolted across the ditch, one of the steers falling into the ditch, and, the other being yoked to him, he was also pulled back and landed upon the back of his yokemate. It seems that there was about five or six inches of water in the ditch, but the noses of the steers were forced into the water, and before the situation could be remedied both were drowned.

The doctrine expressed by the maxim *res ipsa loquitur* is invoked to sustain the verdict of the jury finding that appellant was negligent in not providing some guard around the open ditch. If the ditch was negligently constructed, or, being dangerous, was concealed and left open and unguarded, the doctrine would apply. It is perfectly clear that there was no reason why anyone should go anywhere near this ditch in order to reach the pond, and, in fact, the teamster did not go close enough to the ditch to endanger the safety of his team. From the corner of the boiler room to within a few feet of the fence inclosing the pond the ditch was fenced by a pile of wood about eight feet high. The distance from the gate where the steers bolted to the ditch is variously estimated, but we think the evidence shows it to be about fifteen yards, and so it appears that there was no danger in the ditch, located as it was, to persons or teams going to and from the pond, unless they strayed far from the route, which could not be reasonably anticipated by the company operating the gin plant.

Besides all this, we are unable to appreciate the contention that the ditch was a pitfall, or concealed and

dangerous trap. As we view the record, the ditch, under ordinary circumstances, was entirely obvious to the eyes of all, and was not a menace to man or beast; that the most thoughtful and careful constructor could not have foreseen and provided against the present accident. Doubtless the steers were thirsty and restless, and in their mad desire to get to the water they became unmanageable, and practically committed suicide. So it is a perfectly harmless ditch, situated in a place where a reasonable and careful man would believe that there was no possible reason to anticipate danger therefrom, or injury to anybody or anything, caused the loss of a valuable yoke of oxen to a thrifty farmer.

The rule invoked has no application to a case like this, and therefore the judgment is reversed and the cause dismissed.            *Reversed and dismissed.*